IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT WOLF,

      Plaintiff,

vs.                                                                                  CIV 23-1120 JCH/SCY

TIMOTHY HATCH; JOHN
SANCHEZ; KRISTAL RIVERA;
CHERYL DOREN; and CARL
WILKENS,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Plaintiff's Complaint for Violation of Civil Rights (Doc. 1) and Defendants' corresponding *Martinez* Report (Docs. 21, 37). The Honorable Judith C. Herrera referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 9. Consistent with that Order of Reference, I recommend that the Court grant summary judgment in Defendants' favor regarding Plaintiff's failure to exhaust administrative remedies as to three of his claims. I recommend that the Court deny summary judgment on the remaining five claims.

## PROCEDURAL HISTORY

Plaintiff is incarcerated at Central New Mexico Correctional Facility ("CNMCF"). Doc. 1 at 3. He filed the present complaint on December 15, 2023, alleging that he ordered several books and publications to aid his legal case. *Id.* at 6, 7, 15. The publications included Prison Legal News, paralegal course materials, and a book addressing the Prisoner Litigation Reform Act ("PLRA"). *Id.* Plaintiff alleges that prison officials initially approved the orders, and in at

1

least one instance, money was deducted from his account. *Id.* at 7, 15. However, when the books

and publications arrived, prison officials issued rejection notices. *Id.* Plaintiff alleges he received

rejection notices on eight occasions—February 10, 2022; March 11, 2022; two on March 30,

2022; April 16, 2022; May 10, 2022; June 2, 2023; and June 14, 2023—although it is not clear if

these notices were for eight different books and publications or if some rejection notices were for

the same books or publications.[1] *Id.* at 6, 7, 15. Plaintiff brought suit against the New Mexico

Department of Corrections, Warden Timothy Hatch, Deputy Warden John Sanchez, Unit

Manager Kristal Rivera, Mailroom Clerk Cheryl Doran, and Deputy Warden Carl Wilkens,

alleging the rejections violated his right to access legal information under the First Amendment

and violated his right to due process under the Fourteenth Amendment. *Id.* at 6.

The Court reviewed the complaint sua sponte pursuant to 28 U.S.C. § 1915(e) and

dismissed the claim against New Mexico Corrections Department, but found that the claims

against the individual Defendants survived screening. Doc. 7. After the individual Defendants

appeared in the case, the Court ordered them to file a *Martinez* Report. Doc. 16. Defendants did

so, Doc. 21, and Plaintiff filed a response, Doc. 27.[2] Upon an Order from the Court, Doc. 33,

Defendants filed a supplement to the *Martinez* Report, Doc. 37, and Plaintiff filed a

supplemental response, Doc. 38.

---

[1] Plaintiff also alleges in his complaint that prison officials rejected legal mail on April 19, 2022, but the mail "was later received." Doc. 1 at 15. As such, I do not consider the April 19 rejection notice as one of Plaintiff's claims.

[2] Doc. 27 is a document filed by Plaintiff titled "Legal Arguments." Given the content of that filing, the Court construed it as a response to the *Martinez* Report and gave Defendants additional time to file a reply, which they chose not to do. Doc. 29.

**OTHER MOTIONS**

In addition to responding to the *Martinez* Report, Plaintiff has filed various other motions, which I address below.

**1. Motion for Preliminary Injunction and Temporary Restraining Order**

First, Plaintiff filed a Motion for Preliminary Injunction and Temporary Restraining Order.[3] Doc. 24; *see also* Doc. 28 (response); Doc. 30 (reply). In the motion, Plaintiff alleges that, due to his total hip replacements, a physical therapist had a stationary bike placed in his pod, which he rode regularly. *Id.* at 1. Defendant Krystal Rivera had all of the exercise equipment, including the stationary bike, removed from the pod as retaliation against Plaintiff for his two pending lawsuits. *Id.* Plaintiff therefore seeks a preliminary injunction and temporary restraining order to have the stationary bike placed back in the pod. *Id.* at 3.

To be successful in either a request for a preliminary injunction or temporary restraining order, the plaintiff must show, among other things, that he has a substantial likelihood of success on the merits of the claim. *See Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) ("In order to receive a preliminary injunction, the plaintiff must establish the following factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.") (internal quotation marks and citation omitted); *Eastman v. United States*, 615 F. Supp. 3d 1250, 1254 (D.N.M. 2022) ("The requirements for a [temporary restraining order] issuance are essentially the same as those for a preliminary

---

[3] Plaintiff filed this same motion in two different cases with the District of New Mexico, the present case and *Wolf v. New Mexico Corrections Department*, 23cv382 JB/GJF.

injunction order.") (internal quotation marks and citation omitted). "To demonstrate a substantial likelihood of success on the merits of its claim . . . [the plaintiff] was required to present a prima facie case showing a reasonable probability that it will ultimately be entitled to the relief sought." *Salt Lake Trib. Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1100 (10th Cir. 2003) (internal quotation marks and citation omitted). !

Fatal to Plaintiff's motion for preliminary injunction or temporary restraining order is that the relief he is requesting in the motion is not the same relief at issue in this case. That is, in his complaint, Plaintiff asserts that prison officials violated his right to due process and to access information under the First Amendment when they rejected legal books and publications that he ordered and paid for. Doc. 1. Thus, his discussion in the motion regarding removal of a stationary bike makes no showing that he would be successful on the merits of his First Amendment or due process claims. "Because the limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held,'" Plaintiff's request regarding the stationary bike would have no impact on the parties' relative positions regarding the merits of the dispute over legal books and publications. *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citing *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981)).

I therefore recommend that the Court deny Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order.

### 2. Motion for Witness Statement

After briefing the *Martinez* Report, Plaintiff filed a document titled "Motion: Witness Statement." Doc. 31. The document is a signed statement from Dale Wolf, Plaintiff's brother, attesting that Dale and his girlfriend visited Plaintiff on August 31, 2017 and that they "did not

bring anything to [Plaintiff] because [they] were instructed not to bring anything." *Id.* This statement appears to be a response to a statement made by Defendant Cheryl Duran in her affidavit included with the *Martinez* Report. Doc. 21-10. In that affidavit, Duran states that "Mr. Wolf's brother/relative visited him and attempted to deliver magazines to Mr. Wolf. Those magazines were only allowed in the CNMCF facility after they had been searched to make sure they did not contain contraband hidden within the pages." *Id.* ¶ 11; *see also* Doc. 21 at 4 (*Martinez* Report, asserting that, "Mr. Wolf had an issue where contraband was found in a magazine given to him by his brother. Since then, the review of magazines and books for Mr. Wolf has been for all purchases to prevent further and future abuse."). In response to the *Martinez* Report, Plaintiff argues that accusations of his brother bringing him contraband via a magazine during an August 31, 2017 visit were "made up." Doc. 27 at 4.

Thus, it appears that Plaintiff intends the statement to be an affidavit or declaration in opposition to the *Martinez* Report and to summary judgment. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("Because pro se litigants may be unfamiliar with the requirements to sustain a cause of action, they should be provided an opportunity to controvert the facts set out in the *Martinez* report."); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including . . . affidavits or declarations . . . ."). "An affidavit is '[a] voluntary declaration of facts written down and sworn to by a declarant, [usually] before an officer authorized to administer oaths.'" *Vazirabadi v. Denver Health & Hosp. Auth.*, 782 F. App'x 681, 687 (10th Cir. 2019) (citing *Affidavit, Black's Law Dictionary* (11th ed. 2019)). On the other hand, an unsworn declaration must be signed under "penalty of perjury" that "the foregoing is true and correct" to have the same effect as an affidavit. 28 U.S.C. § 1746. Here, the

witness statement is neither sworn nor signed under penalty of perjury.[4] As such, I recommend that the Court deny the Motion for Witness Statement.[5]

### 3. Motion for Default Judgment

Lastly, on April 21, 2025 Plaintiff filed a Motion for Default Judgment as to Defendant New Mexico Department of Corrections "for failure to plead or other[]wise defend as provided by the Federal Rules of Civil Procedure." Doc. 32; *see also* Doc. 34 (response). However, the Court previously dismissed the claims against Defendant New Mexico Corrections Department. Doc. 7. As such, I recommend denying the Motion for Default Judgment.

<em>MARTINEZ</em> REPORT AND SUMMARY JUDGMENT

In the Order for a *Martinez* Report, the Court notified the parties that "the *Martinez* Report may be used in deciding whether to grant summary judgment, either by motion or sua sponte. Therefore, the parties should submit whatever materials they consider relevant to Plaintiff's remaining claims." Doc. 16 at 3. Defendants filed a *Martinez* Report for consideration "in ruling upon a Motion for Summary Judgment." Doc. 21 at 1. I recommend construing this document as a motion for summary judgment.

In his complaint, Plaintiff alleges that on eight different occasions he received rejection notices from prison officials for legal books and publications. Doc. 1 at 6-7, 15 (listing dates of

---

[4] Relatedly, Defendant Cheryl Duran's affidavit, submitted as part of the *Martinez* Report, is also unsworn as it contains a signature line for a notary public to attest that Duran "swore to me that the foregoing instrument is true and correct," but the notary signature line is blank. Doc. 21-10. And, other than the unsigned notary certification, the affidavit does not contain a statement that it is made under penalty of perjury. Thus, I recommend that the Court not rely on this affidavit when evaluating summary judgment.

[5] To the extent the Court disagrees, the witness statement does not change my remaining recommendations as to exhaustion or the merits of Plaintiff's claims.

6

rejection notices: February 10, 2022; March 11, 2022; two on March 30, 2022;[6] April 16, 2022;

May 10, 2022; June 2, 2023; and June 14, 2023). I construe these eight rejection notices as eight

different claims for relief. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se

litigant's pleadings are to be construed liberally and held to a less stringent standard than formal

pleadings drafted by lawyers."). I begin by addressing whether Plaintiff exhausted his

administrative remedies as to these claims before turning to the merits of his claims.

1. **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on

each side so that a rational trier of fact could resolve the issue either way," and it is material "if

under the substantive law it is essential to the proper disposition of the claim." *Becker v.*

*Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted).

In reviewing a motion for summary judgment, the Court views the evidence and all

reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v.*

*Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially,

the party seeking summary judgment has the burden of showing that there is no genuine dispute

as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.

1993). Once the moving party meets its burden, the non-moving party must show that genuine

---

[6] Plaintiff appears to make claims for two different rejection notices from March 30, 2022—one related to a PLRA book and one related to Prison Legal News. Doc. 1 at 15.

issues remain for trial. *Id.* "[W]here the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

"[T]he court is not authorized to accept factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). To that end, "[a] bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* report are less specific or well-documented than those contained in the report." *Id.* at 1109. To determine if there are any genuine issues of material facts for the purposes of summary judgment, the court may look to, among other things, affidavits. *Id.* at 1110. In the context of this case, "[a] *Martinez* report is treated like an affidavit," as is a plaintiff's complaint "if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury."[7] *Id.* at 1111. Here, the evidence attached to the *Martinez* Report is undisputed, unless specifically noted otherwise.

## 2. Exhaustion

Before turning to the merits of Plaintiff's claims, I address Defendants' assertion that Plaintiff did not exhaust his administrative remedies. Doc. 21 at 4. Section 1997e(a) of the PLRA

---

[7] In this case, although Plaintiff certified his complaint according to Rule 11, he did not sign it under penalty of perjury. Doc. 1 at 13; *compare* Fed. R. Civ. P. 11, under which "[a] signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive," *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991), *with* 28 U.S.C. § 1746, which requires a certification "in substantially the following form": "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." Accordingly, I do not treat Plaintiff's complaint like an affidavit for purposes of this PFRD.

requires that no action be brought "with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), including suits where an inmate is only seeking money damages, *Booth v. Churner*, 532 U.S. 731, 734 (2001). To meet this requirement, an inmate must exhaust all available remedies, *Porter*, 534 U.S. at 524, and the exhaustion requirement is not satisfied by an "untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

Failure to exhaust does not deprive a federal court of jurisdiction over the matter. *Steele v. Fed. Bureau of Prison*, 355 F.3d 1204, 1208 (10th Cir. 2003), *abrogated on separate grounds by Jones v. Bock*, 549 U.S. 199 (2007). However, exhaustion is mandatory under the PLRA and "unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. A court, therefore, must dismiss any unexhausted claims, though dismissal without prejudice is usually preferable. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). Failure to exhaust is an affirmative defense to be raised and proven by the defense. *See Jones*, 549 U.S. at 216; *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

As discussed above, Plaintiff alleges in his complaint that prison staff issued him rejection notices on eight different occasions: February 10, 2022; March 11, 2022; two on March 30, 2022; April 16, 2022; May 10, 2022; June 2, 2023; and June 14, 2023. In their *Martinez* Report, Defendants only address Plaintiff's exhaustion as to three of those notices: February 10, 2022, March 11, 2022, and one of the March 30, 2022 rejections. Doc. 21 at 4; Doc. 21-5. I

begin by addressing those three claims, finding that Plaintiff failed to exhaust all three. As to the

remaining claims, I find that Defendants have not met their burden to show they are entitled to

summary judgment on the affirmative defense of failure to exhaust. *See Campbell v. Mullin*, 251

F. App'x 542, 543 (10th Cir. 2007) ("[T]he failure to exhaust one claim does not result in the

dismissal of them all. Rather, only those claims that remain unexhausted may be dismissed.")

(citing *Jones v. Bock*, 549 U.S. 199, 219-20 (2007)); *Roberts v. Barreras*, 484 F.3d 1236, 1244

(10th Cir. 2007) ("[A]dministrative exhaustion on one claim does not warrant dismissal of the

entire action."). !

      A.  <u>Unexhausted Claims</u>

      *Grievance procedure.* Whether a plaintiff has fully exhausted his claims depends on the

whether he met the grievance procedure set forth by his place of incarceration. *See Jones*, 549

U.S. at 218. The grievance procedure in place during this incident for New Mexico Corrections

Department, which is explicitly applicable to "decisions regarding mail", is as follows. Doc. 21-6

at 5 ¶ E(1)(a). First, an inmate is required to participate in informal resolution by filling out an

Inmate Informal Complaint form within 5 working days of the incident giving rise to the

complaint. Doc. 21-6 at 9 ¶ A(1)(a). The Unit Manager, Chief of Security, or Institution's

designee will "make every effort to resolve the Informal Complaint within 5 working days from

receipt of the Informal Complaint." *Id.* ¶ A(2).

      Next, if the inmate is not satisfied with the results of the informal resolution process, the

inmate may fill out a formal Inmate Grievance form within 5 working days of receipt of the

response to the informal complaint. *Id.* ¶ A(3). Alternatively, if the inmate has not received a

response within 10 working days after submitting an Informal Complaint, he may file a formal

grievance. *Id.* ¶ A(4). The grievance must state what reasonable relief is being requested. *Id.*

¶ A(9). Within 15 working days from receipt of the grievance, the Grievance Officer will

conduct an investigation and deliver a report and recommendation to the Warden. *Id.* at 12

¶ B(5). The Warden reviews the grievance, along with any comments from inmates and staff, and

will make a decision within 15 working days of receipt of the grievance. *Id.* ¶ C(4). The inmate

is informed in writing of the Warden's decision, his right to appeal, and the method by which to

appeal, within 5 working days of the decision. *Id.* at 13 ¶ C(6).

 If an inmate is not satisfied with the decision of the Warden, the inmate may appeal the

decision to the Office of the Secretary of Corrections within five working days of receiving the

Warden's decision. *Id.* ¶ D(1). Within five working days of receiving the appeal, the Grievance

Officer shall attach all relevant materials and deliver it to the Statewide Grievance/Disciplinary

Appeals Manager. *Id.* ¶ D(3). Within 20 working days of receiving the appeal, the Statewide

Grievance/Disciplinary Appeals Manger will conduct any further investigation and provide a

recommendation to the Secretary. *Id.* ¶ D(5). The Secretary, Director of Adults Prisons, or a

designee will then render a final decision. *Id.* ¶ D(6). In total, no more than 90 working days will

pass from the filing of a grievance by an inmate to the appeal decision. *Id.* at 7 ¶ H(1).

 Grievances that are untimely, incomplete, or otherwise improperly submitted will be

returned to the inmate with an explanation. *Id.* at 11 ¶ B(2). If a grievance is not disposed of

within the specified time limits, the inmate shall be deemed to have exhausted the administrative

remedies. *Id.* at 7 ¶ H(4). Inmates must complete a separate grievance form for each issue

complained about. *Id.* at 10 ¶ A(8).

 *Plaintiff's grievances.* Here, both Plaintiff and Defendants provided the Court with the

same two grievances submitted by Plaintiff, listing the dates of incidents as February 11, 2022,

March 11, 2022, and March 30, 2022. It appears from Plaintiff's complaint that all these claims

may be related to the same book rejection. That is, the complaint alleges,

> I had sent off for a PLRA (Prison Litigation Reform Acts) book. Kristal Rivera
> was the Unit Manager at the time. Kristal Rivera signed the debt memo, money
> transactions, taking the money from Plaintiff's inmate account 2-10-22. The mail
> room clerk Cheryl Doran sent Plaintiff one of many rejection notices starting 2-
> 10-22, 3-11-22, 3-30-22.

Doc. 1 at 15 (cleaned up). Whether treated as one claim for rejection of one book or three

separate claims, I recommend finding that Plaintiff failed to exhaust his administrative remedies.

First, on April 1, 2022, Plaintiff submitted an Inmate Informal Complaint regarding

rejection of a PLRA book he ordered, listing the dates of incidents as February 10, 2022 and

March 11, 2022.[8] Doc. 21-5 at 2-3; Doc. 38 at 38. The designee reviewing the informal

complaint rejected it as untimely. *Id.* Indeed, Plaintiff's April 1, 2022 grievance was not filed

within 5 working days of the incidents giving rise to the complaint (February 1, 2022 and March

11, 2022). *See* Doc. 21-6 at 9 ¶ A(1)(a).

Second, on April 8, 2022, Plaintiff submitted a formal Inmate Grievance, with the dates

of incidents listed as "3-30-22/2-10-11." Doc. 21-5 at 1; Doc. 38 at 39. This grievance discussed

a rejection notice Plaintiff received on March 30, 2022 for a book that "had been sitting here

since 3-11-22." Doc. 21-5 at 1; Doc. 38 at 39. The Grievance Officer rejected the grievance,

noting that the informal complaint was untimely. Doc. 21-5 at 1-2; Doc. 38 at 39. To the extent

this grievance is an appeal of his previously-submitted Informal Complaint, it does not satisfy

---

[8] The grievances provided to the Court by the parties are slightly different. In the version
submitted by Defendants, the date of incident is listed as "2-10-22." Doc. 21-5 at 3. In the
version Plaintiff submitted, there is some additional writing and the date of incident is listed as
"2-10-22/3-11-22." Doc. 38 at 38. I find the difference immaterial because the body of the
complaint (which is the same in both versions) references the March 11 date, stating that the
book "sat here from March 11, 2022 and was later sent back." Doc. 21-5 at 3; Doc. 38 at 38.

exhaustion requirements because the Informal Complaint was untimely. To the extent this grievance is a new claim (as the Informal Complaint listed dates of incidents of February 10, 2022 and March 11, 2022 and the formal Inmate Grievance listed dates of incidents of March 30, 2022 and February 10, 2022), it also does not satisfy exhaustion requirements because Plaintiff did not first file an Informal Complaint.

For these reasons, I recommend finding that Plaintiff failed to exhaust his administrative remedies regarding his claims for rejection of a PLRA book from February 10, 2022; March 11, 2022; and March 30, 2022.

*Exceptions.* Although the PLRA requires exhaustion of administrative remedies, "the PLRA only requires the exhaustion of 'available' administrative remedies." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citing 42 U.S.C. § 1997(e)(a)). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Id.*

Plaintiff alleges that the Grievance Officer "trashes" grievances "before anything can be done with them." Doc. 1 at 10. Here, however, the issue is not that Plaintiff claims to have submitted a grievance, which was then destroyed by an officer such that Defendants were unable to locate it. Rather, the issue is that grievances both sides agree Plaintiff did submit were untimely. Plaintiff also alleges that the Grievance Officer "let the grievance sit in the grievance box from March to April 14, 2022." Doc. 27 at 3. But both grievances discussed above are dated, by Plaintiff, with April 2022. Doc. 21-5 at 1, 3; Doc. 38 at 38-39. Accordingly, I recommend finding that an exception to exhaustion does not exist.

B. Claims Which Defendants Failed to Address

Other than the grievances related to the three claims discussed above (February 10, 2022,

March 11, 2022, and March 30, 2022 regarding the PLRA book), Defendants fail to provide any

information about whether Plaintiff exhausted his administrative remedies for his other claims

(March 30, 2022 regarding Prison Legal News; April 16, 2022; May 10, 2022; June 2, 2023; and

June 14, 2023). That is, in their *Martinez* Report, Defendants provide no further grievances.

They also did not provide an affidavit indicating that no further grievances exist. Indeed, after

reviewing the initial *Martinez* Report (which includes only the two grievances discussed above),

the Court ordered Defendants to file a supplement to the *Martinez* Report "with any grievances

Plaintiff submitted related to the May 2022 and June 2023 rejections notice. If no . . . further

grievances exist, Defendants shall certify as much." Doc. 33 at 2. In response, Defendants

provide no further grievances and fail to certify whether further grievances exist. *See* Doc. 37.

Failure to exhaust administrative remedies under the PLRA is an affirmative defense to

be raised and proven by the defense. *See Jones*, 549 U.S. at 216; *Roberts v. Barreras*, 484 F.3d

1236, 1241 (10th Cir. 2007). In other words, "[w]hen a defendant moves for summary judgment

based on an affirmative defense, Rule 56 puts the burden on the defendant to 'demonstrate that

no disputed material fact exists regarding the affirmative defense asserted.'" *Estrada v. Smart*,

107 F.4th 1254, 1261 (10th Cir. 2024) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir.

1997)). Here, by failing to provide the Court with undisputed facts about any further grievances,

Defendants have failed to meet that initial burden. Thus, they are not entitled to summary

judgment for failure to exhaust on Plaintiff's remaining claims.

In sum, I recommend granting summary judgment in Defendants' favor as to Plaintiff's

claims for rejection of a PLRA book on February 10, 2022; March 11, 2022; and March 30, 2022

because, based on the undisputed evidence, he failed to exhaust his administrative remedies for

those claims. I recommend denying summary judgment for failure to exhaust as to Plaintiff's

other claims (March 30, 2022 regarding Prison Legal News; April 16, 2022; May 10, 2022; June

2, 2023; and June 14, 2023).

### 3.  Merits of Constitutional Claims

Turning to the merits of Plaintiff's remaining claims, he asserts that Defendants violated

his right to access information under the First Amendment and his right to due process under the

Fourteenth Amendment when they rejected legal books and publications that he ordered, and in

at least one instance, already paid for. In their *Martinez* Report, Defendants request summary

judgment, arguing that they did not violate Plaintiff's constitutional rights. However,

Defendants, as the party seeking summary judgment, fail to meet their burden of showing that

there is no genuine dispute as to any material fact and that they are entitled to judgment as a

matter of law.

As an initial matter, Defendants do not present undisputed facts as to whether prison

officials did or did not deny Plaintiff access to books and publications. That is, Defendants argue

that "NMCD staff have worked with [Plaintiff] and have not denied his materials as he did

receive[] these materials," Doc. 21 at 3; that while the review of magazines and books includes

"additional time and a bigger delay" which Plaintiff was unhappy about, Plaintiff "was given his

books and materials that he purchased," *id.* at 4; and that Plaintiff's "right to these materials was

not denied," *id.* On the other hand, they also acknowledge that "Plaintiff received several

rejection notices from the mailroom and/or the Warden, when, for example, mail was suspicious

and/or contained contraband and/or could be used as a weapon." Doc. 21 at 2; *see also* Doc. 37

at 2 (same).

Indeed, the evidence Defendants include in the *Martinez* Report itself creates a dispute as to whether prison officials denied Plaintiff certain books and publications. For example, Defendant Timothy Hatch, Warden at CNMCF from July 2021 to October 2022, provided an affidavit as part of the *Martinez* Report, attesting that "[a]t no time was Mr. Wolf denied receipt of papers or books by mail or mail order; however, the inspection process takes place before providing the materials to the inmate and that occurred in Mr. Wolf's case." Doc. 21-9 at 2 ¶ 8. But, Defendant Krystal Rivera, current Deputy Warden at CNMCF and former Unit Manager, stated in her second affidavit that she located "one item that was rejected and signed off on by former Warden Timothy Hatch." Doc. 37-1 at 2 ¶ 10. Further, she provided in her first affidavit that "Mr. Wolf was upset because he ordered his own magazine subscription to Prison News which, per policy, was not permitted because CNMCF library already had a subscription."[9] Doc. 21-11 at 1 ¶ 3.

As to the actual rejection notices, Defendants produced several in their supplemental *Martinez* Report. *See* Doc. 37-2 at 1 (March 30, 2022 mail rejection notice regarding Prison Legal News Publishing); Doc. 37-2 at 7 (May 10, 2022 mail rejection notice regarding Blackstone Career Institute); Doc. 37-2 at 27 (June 2, 2023 mail rejection notice regarding Prison Legal News). However, in his complaint Plaintiff also alleges he received rejection notices on April 16, 2022,[10] and June 14, 2023, which Defendants did not produce. To the extent Defendants would argue that those rejections do not exist, or are rejections for the same material

---

[9] Defendant Cheryl Duran, Unit Manager at CNMCF from September 2016 to June 2022, also stated in her affidavit that "Mr. Wolf received several rejection notices from the mailroom when, for example, mail was suspicious and/or contained contraband and/or could be used as a weapon, or when the materials were available in the Prison Library." Doc. 21-10 at 2 ¶ 9. As discussed above, however, Duran's affidavit is unsworn and so I do not consider this evidence.

[10] In his response to the *Martinez* Report, Plaintiff attached the Informal Complaint he filed as to the April 16, 2022 rejection notice. Doc. 38 at 40.

as another rejection notice, Defendants offer no evidence, such as an affidavit, to support any

such argument. In sum, there is a dispute about whether all the rejections Plaintiff complains

about exist and this dispute cannot be resolved on the basis of evidence submitted.

Defendants also offer no argument regarding the legal standards for Plaintiff's First

Amendment and due process claims. As to Plaintiff's First Amendment claims, "[i]nmates have

a First Amendment right to receive information while in prison to the extent the right is not

inconsistent with prisoner status or the legitimate penological objectives of the prison."

*Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004) (citing *Pell v. Procunier,* 417 U.S.

817, 822 (1974)). That is, "restrictive prison regulations [including restrictions on First

Amendment rights] are permissible if they are reasonably related to legitimate penological

interests and are not an exaggerated response to those concerns." *Wardell v. Duncan*, 470 F.3d

954, 959–60 (10th Cir. 2006) (citing *Turner v. Safley*, 482 U.S. 78 (1987)) (alterations in

original). "*Turner* set out four factors for assessing reasonableness in this context:"

> First, is there a valid, rational connection between the prison regulation and the
> legitimate governmental interest put forward to justify it? Second, are there
> alternative means of exercising the right that remain open to prison inmates?
> Third, what impact will accommodation of the asserted constitutional right have
> on guards and other inmates, and on the allocation of prison resources generally?
> And, fourth, are ready alternatives for furthering the governmental interest
> available?

*Id.* at 960.

Here, Defendants offer no undisputed facts and no arguments to address the *Turner*

factors. Indeed, they offer different, conflicting, explanations for why prison officials rejected

Plaintiff's books and publications. In their *Martinez* Report and supplement, they assert that mail

was rejected when it was "suspicious and/or contained contraband and/or could be used as a

weapon." Doc. 21 at 2. The rejection notices themselves provide different explanations, stating

that on March 30, 2022 staff rejected a publication from Prison Legal News Publishing because it was "not authorized- must obtain authorization," Doc. 37-2 at 1; on May 10, 2022 staff rejected a publication from Blackstone Career Institute because it must be sent through the "Securus Digital," *id.* at 7; and on June 2, 2023 staff rejected a publication from Prison Legal News, with the only explanation that "package rejected (per Captain J. Santiago)," *id.* at 27. And, in her affidavit, Defendant Rivera explains that Plaintiff "was upset because he ordered his own magazine subscription to Prison News which, per policy, was not permitted because CNMCF library already had a subscription." Doc. 21-11 at 1 ¶ 3; Doc. 37-1 at 1 ¶ 3 (citing the New Mexico Corrections Department library policy that inmates shall have access to Library service, Doc. 21-7). As for all these different reasons, Defendants offer no undisputed facts or argument to explain the penological interest to justify the rejection. Accordingly, I recommend finding that Defendants have not met their burden of showing undisputed facts or that they are entitled to judgment as a matter of law on Plaintiff's First Amendment claims.

As to Plaintiff's due process claim, "[a] due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (*citing Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569 (1972)). "[A] deprivation occasioned by prison conditions or a prison regulation [including a property interest claim] does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (citing *Sandin v. Connor,* 515 U.S. 472, 484 (1995)). !

Here, Plaintiff alleges in the complaint that on at least one occasion, prison staff rejected a legal publication for which he had already paid. Doc. 1 at 15. It is not clear from his complaint

which rejection notice this claim relates to, but the allegation appears in a paragraph discussing the February 10, 2022, March 11, 2022, and March 30, 2022 rejection notices. *Id.* Reviewing the evidence submitted in the *Martinez* Report in the light most favorable to Plaintiff, it appears this claim relates to the March 30, 2022 rejection of Prison Legal News. That is, prison official issued a rejection notice on March 30, 2022 for a publication from Prison Legal New Publishing. Doc. 37-2 at 1 (rejection notice). Plaintiff's account statement indicates that on February 17, 2022 money was withdrawn from his account to pay for Prison Legal News. Doc. 21-3 at 1; Doc. 21-4 at 1. Although Defendants asserts that Plaintiff was not denied due process, they present no undisputed material facts as to Plaintiff's due process claim and no argument as to whether the withdrawal of funds from Plaintiff's account for a publication Defendants then refused to provide rises to the level of an atypical and significant hardship. I therefore recommend denying summary judgment on this claim. !

## RECOMMENDATIONS

For the above stated reasons, I recommend that Court rule as follows:

- DENY Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 24); !

- DENY Plaintiff's Motion for Witness Statement (Doc. 31); !

- DENY Plaintiff's Motion for Default Judgment (Doc. 32);

- GRANT summary judgment in Defendants' favor, finding that Plaintiff failed to exhaust his administrative remedies regarding his claims for rejection of a PLRA book on February 10, 2022, March 11, 2022, and March 30, 2022, and dismiss those claims without prejudice; and

- DENY summary judgment as to Plaintiff's First Amendment and due process claims regarding rejections of books and publications on March 30, 2022 (related to Prison Legal News), April 16, 2022, May 10, 2022, June 2, 2023, and June 14, 2023.

_____
Steven C. Yarbrough
United States Magistrate Judge

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**